**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DERRICK SCHWARTZ, individually and JODY AHLFINGER, as the Court Appointed Personal Administrator of the ESTATE OF PENNY SCHWARTZ,**<br><br>                    **Plaintiffs,**<br><br>          **v.**<br><br>**GWINNETT COUNTY, Georgia, CHARLES WALTERS, LYNDSEY PERRY, PHIL RAINES, LENORA TAYLOR, ANGELA CONLEY, TONYA HOLTER, NEOMI SANCHEZ, R.E. LONG, D.A. BROWN, and JOHN DOES (1-10),**<br><br>                    **Defendants.** | **1:11-cv-2727-WSD** |

| | |
|---|---|
| **JODY AHLFINGER and MICHAEL SCHWARTZ, individually and JODY AHLFINGER, as the Court Appointed Personal Administrator of the ESTATE OF BARBARA BAKER,**<br><br>                    **Plaintiffs,**<br><br>          **v.** | **1:11-cv-2728-WSD** |

| GWINNETT COUNTY, Georgia, CHARLES WALTERS, LYNDSEY PERRY, PHIL RAINES, LENORA TAYLOR, ANGELA CONLEY, TONYA HOLTER, NEOMI SANCHEZ, R.E. LONG, D.A. BROWN, and JOHN DOES (1-10), |
| --- |
| **Defendants.** |

## OPINION AND ORDER

This matter[1] is before the Court on D.A. Brown ("Brown") and Lyndsey Perry's ("Perry," collectively the "Police Officer Defendants") Motions for Summary Judgment [Ahlfinger Action Dkt. 64, Schwartz Action Dkt. 43]; Gwinnett County, Charles Walters, Phil Raines, Lenora Taylor, Angela Conley, Tonya Holter, and Neomi Sanchez (collectively the "911 Defendants") Motions for Summary Judgment [Ahlfinger Action Dkt. 58, Schwartz Action Dkt. 39], and

---

[1] Ahlfinger, et al. v. Gwinnett County, et al., Civil Action No. 1:11-cv-2728-WSD (filed July 19, 2011) (the "Ahlfinger Action") and Schwartz, et al. v. Gwinnett County, et al., Civil Action No. 1:11-cv-2727-WSD (filed July 20, 2011) (the "Schwartz Action") involve the same July 22, 2009, incident and the motions before the Court are based on common facts, grounds, and arguments. On November 23, 2011, the Court approved the parties' request in these two cases to conduct consolidated discovery. Because the parties' nearly-identical summary judgment briefs in each case address the same issues and rely upon the same facts, the Court considers them together in this consolidated order.

Plaintiffs' Request for Oral Hearing on the 911 Defendants' Motions for Summary Judgment [Ahlfinger Action Dkt. 88; Schwartz Action Dkt. 52.2].[2]

## I.    BACKGROUND

### A.    Factual history

At 8:44 p.m. on July 22, 2009, Barbara Baker ("Baker") called Gwinnett County's 911 communications center to report that "I've got a daughter here that's totally out of control threatening to shoot herself.  She needs some help, somebody to get her to somewhere."  (Ex. A to Police Officer Defs.' Mot. for Summ. J. at Track 1-1, 00:00-02:45).  Phil Raines ("Raines"), a 911 operator, asked Baker if her daughter, Penny Schwartz ("Schwartz"), had a gun and Baker replied "I think she does, I don't know."  (Id.).  Baker also told Raines that there were no guns in the house that she knew of.  (Id.).  Baker told Raines that Schwartz was in a rage and "threatening to kill herself."  (Id.).

In response to Raines' questions about whether Schwartz was taking any medication, Baker replied that "I'm afraid she's been on some kind of illegal junk, I don't know.  But she is on some other kind of medication for something they

---

[2] The Court dismisses *sua sponte* the John Doe defendants.  Fictitious party pleading is not permitted in federal court, unless a plaintiff describes the defendants with enough specificity to determine their identities.  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  Plaintiffs have not made any attempt to amend the complaint or substitute the proper parties, and dismissal of the claims against "John Does (1-10)" is appropriate.

gave her at the doctors the day before yesterday." (Id.). Baker further reported to Raines that Schwartz had previously attempted suicide using drugs. (Id.). Raines told Baker that police officers were on the way and ended the call. (Id.).

Raines entered the information provided by Baker into the 911 computer system during his call and transmitted it to the 911 Dispatcher, Neomi Sanchez ("Sanchez"). (Dep. of Phil Raines at 89-90, 94-95). Sanchez was being trained at the time by Tonya Holter ("Holter"). (Dep. of Neomi Sanchez at 11-12, 17; Dep. of Tonya Holter at 55). Instead of typing into the computer system that there were no guns in the house that Baker knew of, Raines' entry stated that Baker said there were no weapons in the house. (Ex. 2 to Dep. of Phil Raines; Dep. of Tonya Holter at 106).

Around 8:45 p.m., Sanchez reviewed the information in the computer system and commented to Holter that the statement by Baker that Schwartz was threatening to shoot herself while concurrently reporting that there were no weapons in the residence did not make sense. (Dep. of Neomi Sanchez at 18-19, 32-33, 72). Holter sought clarification from Raines, who was across the room in the 911 communications center, and was told by him that the computer system accurately reflected that Baker stated there were no weapons in the residence. (Dep. of Tonya Holter at 64-65). Holter told Sanchez that there was no additional

information regarding whether a weapon was present and to communicate the information from the computer system to the officer that would be dispatched to the scene. (Dep. of Neomi Sanchez at 34-35, 37, 74; Dep. of Tonya Holter at 71-72, 74-75, 79, 84-85).

Based on Officer Lyndsey Perry's ("Perry") geographic proximity to Baker's residence, the 911 computer system recommended to Sanchez that Perry be dispatched to the scene. (Dep. of Tonya Holter at 47). When an officer is dispatched to the scene of an incident, Gwinnett County's 911 computer system transmits the information entered by the 911 operator to that officer's vehicle computer. (Dep. of Lyndsey Perry at 31-34).

At 8:46 pm, Sanchez contacted Perry by radio to dispatch her to the Baker residence to address the situation. (Ex. B to 911 Defs.' Mot. for Summ. J. at 00:15; Ex. 2 to Dep. of Phil Raines at Bates 2447). Sanchez told Perry that Schwartz was threatening suicide by pill. (Id.).

Perry read the information Raines entered into the 911 computer system on the computer in her vehicle and noted that it indicated Schwartz was threatening to shoot herself. (Dep. of Lyndsey Perry at 33-34). Perry questioned Sanchez regarding whether Schwartz was threatening to commit suicide by shooting herself or by taking pills. (Id.). Sanchez told Perry that Baker stated that Schwartz was

threatening to shoot herself and that there were no weapons in the residence. (Ex. B to 911 Defs.' Mot. for Summ. J. at 01:25-01:58; Dep. of Lyndsey Perry at 35-38, 66-69).

At around 8:55 pm, Perry arrived at Baker's residence. (Ex. 2 to Dep. of Phil Raines at Bates 2447). Perry is the only person to testify about the events that occurred at the Baker residence.[3] Perry testified that upon arriving at the Baker residence, Perry "walked up the driveway and at least one flight of stairs to a landing outside" of the house. (Dep. of Lyndsey Perry at 69, 74).[4] When she arrived, someone could be seen standing in the kitchen, beyond the foyer area, who motioned Perry to enter the residence. (Id.). Perry opened the door and stepped inside, where she was met in the foyer by the woman who had been standing in the

---

[3] Although only Perry testified about these events as a result of both Baker and Schwartz being killed during this encounter, Plaintiffs dispute Perry's testimony about the events.

[4] Plaintiffs are required under Local Rule 56.1 B. to file a response to Defendants' "statement of the material facts to which the [Defendants] contend there is no genuine issue to be tried" that contains "individually numbered, concise, nonargumentative responses corresponding to each of the [Defendants'] numbered undisputed material facts." L.R. 56.1 B. Local Rule 56.1 B.(2) states further that a fact will be deemed "admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence." L.R. 56.1 B.(2)(i). Plaintiffs did not comply with the requirement of this rule with respect to Perry's testimony about the events that occurred at the Baker residence. They admit Perry's testimony, but then "dispute" it without reference to any record evidence. Plaintiffs also have not offered any expert or other circumstantial evidence to dispute Perry's account of the events.

kitchen.  (Id. at 70, 74).  At this time, Perry was two to three feet inside of the residence.  (Id.).  The woman who met her was Baker, who said "she's going to shoot you, she's got a gun, she's going to shoot you to get you to shoot her."  (Id. at 71-72, 74).

At 8:56 p.m., after speaking with Baker about her Schwartz's possession of a gun, Perry reported to the 911 dispatcher that Schwartz was armed.  (Dep. of Lyndsey Perry at 72-73; Ex. B to 911 Defs.' Mot. for Summ. J. at 10:49-10:55; Ex. 2 to Dep. of Phil Raines at Bates 2447).

After reporting to the 911 dispatcher that Schwartz was armed, Perry asked Baker where her daughter was located in the residence.  (Dep. of Lyndsey Perry at 74).  During this questioning, Perry heard a door open upstairs and heard someone stomping through the hallway in Perry's direction.  (Id.).  Perry removed her weapon from the holster and held it in the "ready-low" position.  (Id. at 92-93).  As Schwartz came down the upstairs hall, she screamed: "are they hear, are they f---ing here yet."  (Id. at 155).  Stomping down the hall, Schwartz got to the stairs and started down the stairs to the foyer with a gun pointed at Perry.  (Id. at 75, 88, 155).

The time between Perry hearing the upstairs door open until Schwartz began coming down the stairs with a weapon was a matter of seconds.  (Id. at 88).  When Schwartz rounded the upstairs corner and began down the stairs with her gun

pointed at Perry, Perry shot at Schwartz.  (Id. at 93).  She fired two rounds, stopped to assess the threat, and, still seeing the gun in Schwartz's hand and Schwartz still moving toward her, fired three more rounds.  (Id. at 93-95).  Schwartz dropped her gun and fell to the floor.  (Id. at 105-06).

Just before the shots were fired, Perry saw Baker standing off to the side in front of her with a view of the stairs.  (Id. at 74).  When Schwartz began down the stairs with the gun pointed toward Perry, she was not aware of Baker's location. (Id. at 81-82).  She did see some movement out of the corner of her eye, but does not know if it was Baker moving.  (Id. at 82).  One of the shots fired by Perry struck and killed Baker.  (Id. at 159-60).

When Perry was dispatched to respond to the 911 call from Baker, her supervisor was Sergeant D.A. Brown ("Brown," collectively with Perry, the "Police Officer Defendants").  (Dep. of D.A. Brown at 23).  Brown was not at the scene of the incident and did not know until after the shooting that Perry had been dispatched to the Baker residence because he was in the bathroom when the 911 call came in.  (Id. at 37, 40-41, 45-47).  After being dispatched to the Baker residence, Perry did not contact Brown for direction.  (Dep. of Lyndsey Perry at 57-58, 62-66).

Brown and Perry were trained and certified law-enforcement officers on July 22, 2009. (Exs. E and F to Police Officer Defs.' Mot. for Summ. J.). There is no evidence that the 911 operators in this action were other than properly trained to handle emergency calls from citizens. (Ex. A to the 911 Defs.' Mot. for Summ. J.).

B.    Procedural history

The Complaints in these actions were filed in the State Court of Gwinnett County on July 19, and 20, 2011. (Schwartz Compl. at 1; Ahlfinger Compl. at 1). Both Complaints assert four identical claims against the Police Officer and 911 Defendants. (Schwartz Compl. ¶¶ 67-83; Ahlfinger Compl. ¶¶ 62-78). Claim One asserts a 42 U.S.C. § 1983 cause of action claiming that Baker and Schwartz's Fourth and Fifth Amendment rights were violated by Defendants' use of force.[5]

---

[5] Plaintiffs, who are represented by counsel, cannot seek relief on their alleged Fifth Amendment violations because there is no federal action claimed in this litigation. (See, e.g., Pls.' Br. in Resp. to the Police Officer Defs.' Mot. for Summ. J. [Ahlfinger Action Dkt. 90] at 6). Plaintiffs argue on summary judgment that their Fifth Amendment claims should be considered in the context of the Fourteenth Amendment, but they have not moved to amend their Complaint, Defendants have not consented to construing the Fifth Amendment claims as Fourteenth Amendment claims, and the Court will not consider arguments based on a Fourteenth Amendment due process violation. See Chen ex rel. V.D. v. Lester, 364 F. App'x 531, 537 (11th Cir. 2010) (citing Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997)) ("Because Plaintiffs did not allege that any defendants were federal officials, claims brought under the Fifth Amendment were properly dismissed."); (Ahlfinger Pls.' Br. in Resp. to the Police Officer Defs.'

Claim Two asserts a state wrongful death claim against Defendants. Claim Three

alleges that the estates of Baker and Schwartz are asserting Claims One and two

against Defendants. Claim Four seeks attorneys' fees and costs in this action.

---

Mot. for Summ. J. [Ahlfinger Action Dkt. 90] at 11; Schwartz Pls.' Br. in Resp. to the Police Officer Defs.' Mot. for Summ. J. [Schwartz Action Dkt. 62] at 8). Even if Plaintiffs were to amend their Complaints to state a due process claim under the Fourteenth Amendment, the Court would find that summary judgment for Defendants on their claims against Brown and the 911 Defendants is appropriate here because there is no evidence of deliberate indifference to an extremely great risk of serious injury or other conduct that shocks the conscience by these Defendants. See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846-48, 853-54 (1988) ("[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.'"); Doe v. Braddy, 673 F.3d 1313, 1318 n.4 (11th Cir. 2012); Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1305-06 (11th Cir. 2003) ("Determinations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor *must be egregious-that is, shock the conscience-at the time the government actor made the decision.*"); Wideman v. Shallowford Cmty. Hosp., Inc., 826 F.2d 1030, 1031, 1034, 1037 (11th Cir. 1987) (constitutional due process claims do not arise from alleged negligence in providing emergency services to those who are not in state custody); Cannon v. Taylor, 782 F.2d 947, 950 (11th Cir. 1986) (injuries caused by officer's negligence or gross negligence not actionable under Section 1983); Walton v. Salter, 547 F.2d 824 (5th Cir. 1976) (actions of officer which were negligent and in willful and wanton disregard for the safety of others not actionable under Section 1983); see also Robinson v. Twp. of Redford, 48 F. App'x 925, 928 (6th Cir. 2002) (no due process violation under state-created-danger theory for non-custodial situations unless a state actor knew or clearly should have known that its actions specifically endangered an individual); Cleveland v. Fulton Cnty., 396 S.E.2d 2, 3 (Ga. Ct. App. 1990) (no constitutional violation under Section 1983 arises from providing inadequate 911 emergency services).

On August 23, 2012, the 911 Defendants moved for summary judgment. (911 Defs.' Mot. for Summ. J. [Ahlfinger Action Dkt. 58]; 911 Defs.' Mot. for Summ. J. [Schwartz Action Dkt. 39]).

On August 29, 2012, the Police Officer Defendants moved for summary judgment. (Police Officer Defs.' Mot. for Summ. J. [Ahlfinger Action Dkt. 64]; Police Officer Defs.' Mot. for Summ. J. [Schwartz Action Dkt. 43]).[6]

On October 8, 2012, Perry filed for bankruptcy protection under Chapter 7 and invoked the automatic stay provisions that preclude the Court from deciding the claims against her [Schwartz Action Dkt. 64]. Therefore, the Court will only address the claims against the 911 Defendants and Brown.[7]

## II.    DISCUSSION

### A.    Standard for summary judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[6] On September 4, 2012, all claims against Defendant Richard E. Long were dismissed with prejudice [Ahlfinger Action Dkt. 65, Schwartz Action Dkt. 45]. On September 24, and 25, 2012, Plaintiffs requested a hearing on the 911 Defendants' Motions for Summary Judgment [Ahlfinger Action Dkt. 88; Schwartz Action Dkt. 52.2]. After a careful review of the record, the Court finds that there is no need for a hearing regarding the 911 Defendants' Motions for Summary Judgment. Plaintiffs' request for a hearing is denied.

[7] The Court notes that the majority of the factual allegations and legal arguments in the parties' briefs relate only to the claims asserted against Perry.

matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "*to the extent supportable by the record*." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing

of inferences from the facts are the function of the jury . . . .” Graham, 193 F.3d at

1282.  “If the record presents factual issues, the court must not decide them; it must

deny the motion and proceed to trial.”  Herzog, 193 F.3d at 1246.  But, “[w]here

the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party,” summary judgment for the moving party is proper.  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    B.    Claim 1 - Plaintiffs’ Section 1983 constitutional claims

Section 1983 provides: “Every person who, under color of any statute,

ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

subjected, any citizen of the United States . . . to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to

the party injured in an action at law, suit in equity, or other proper proceeding for

redress.”  42 U.S.C. § 1983.   While not a source of substantive rights, Section

1983 provides a method for vindicating federal rights conferred by the Constitution

and federal statutes.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

To prevail in an action under Section 1983, a plaintiff must make a *prima

facie* showing of two elements: (1) that the act or omission deprived plaintiff of a

right, privilege or immunity secured by the Constitution or laws of the United

States, and (2) that the act or omission was done by a person acting under color of

law.  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171,

1174 (11th Cir. 1993); Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)

("A successful section 1983 action requires a showing that the conduct complained

of (1) was committed by a person acting under color of state law and (2) deprived

the complainant of rights, privileges, or immunities secured by the Constitution or

laws of the United States.").  The Eleventh Circuit has stressed "that Section 1983

must not be used as a font of tort law to convert state tort claims into federal causes

of action."  Peterson v. Baker, 504 F.3d 1331, 1336 (11th Cir. 2007) (internal

quotation marks omitted); see also Loftus v. Clark-Moore, 690 F.3d 1200, 1206

(11th Cir. 2012).

> 1.  *Claims against the 911 Defendants and Brown for unreasonable use of force in violation of the Fourth Amendment[8]*

For the 911 Defendants and Brown to be liable for an unconstitutional use of

force, they must have been present at the scene and in a position to intervene.  See

---

[8] Plaintiffs' Complaints allege "Defendants used excessive force" in violation of Baker and Schwartz's Fourth and Fifth Amendment rights.  (Schwartz Compl. ¶ 68; Ahlfinger Compl. ¶ 63).  In their Complaints, Plaintiffs did not specify whether their Fourth Amendment claim under Section 1983 was based on the conduct of individuals or a theory of supervisory liability.  Plaintiffs also did not specify if the claims against Defendants are brought in their individual or official capacities, or both.  Because the parties' pleadings on summary judgment address these various, unpled grounds of liability for a violation of Schwartz and Baker's Fourth Amendment rights, the Court will address the parties' arguments.

Crenshaw v. Lister, 556 F.3d 1283, 1293-94 (11th Cir. 2009); Riley v. Newton, 94

F.3d 632, 635 (11th Cir. 1996); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir.

1986), abrogated by Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000); Gainor v.

Douglas Cnty., Ga., 59 F. Supp. 2d 1259, 1289 (N.D. Ga. 1998); see also

Wideman, 826 F.2d at 1031, 1034, 1037 (constitutional violations do not arise

from alleged negligence in providing emergency services to those who are not in

state custody); Bradberry v. Pinellas Cnty., 789 F.2d 1513, 1517 (11th Cir. 1986)

(no constitutional violation under Section 1983 where municipality fails to

adequately train one of its agents who fails in attempting to rescue a person from a

peril not created by the governmental agency).[9]  It is undisputed that the 911

_____

[9] Plaintiffs cite cases from the Sixth Circuit to support their argument that the 911
Defendants may be held liable for a Fourth Amendment unreasonable use of force
violation even though they were not physically present at the scene.  (See, e.g.,
Pls.' Resp. to Defs.' Mot. for Summ. J. [Ahlfinger Action Dkt. 87] at 6-7).  The
Court has reviewed those cases and finds they are not persuasive and do not
support the conclusion that the 911 Defendants may be liable for a Fourth
Amendment violation where they were not present at the scene and did not know
or clearly should have known at the time that their actions endangered any
individuals.  See Smoak v. Hall, 460 F.3d 768, 784-85 (6th Cir. 2006); Robinson,
48 F. App'x at 928 (no due process violation under state-created-danger theory for
non-custodial situations unless a state actor knew or clearly should have known
that its actions specifically endangered an individual).  The Court also reviewed
Bibart v. Stachowiak, 888 F. Supp. 864 (N.D. Ill. 1995), which was cited by
Plaintiffs, and examined the standard for qualified immunity for a police dispatcher
on a Fourth and Fourteenth Amendment claim.  The Court finds it does not impact
its conclusion that the 911 Defendants and Brown are not liable for a violation of
Baker and Schwartz's Fourth Amendment rights.  See Crenshaw, 556 F.3d at

Defendants and Brown were not present at the scene of the shooting, did not use force against Baker or Schwartz, and were not in a position to intervene to prevent Perry from using force. Summary judgment is appropriate for the 911 Defendants and Brown on Plaintiffs' Fourth Amendment claim based on an unreasonable use of force.

> 2. *Claims against the 911 Defendants and Brown for unreasonable use of force in violation of the Fourth Amendment on the grounds of supervisory liability*

"A supervisor can be held liable for the actions of his subordinates under § 1983 if he personally participates in the act that causes the constitutional violation or where there is a causal connection between his actions and the constitutional violation that his subordinates commit." AFL-CIO v. City of Miami, 637 F.3d 1178, 1190 (11th Cir. 2011). "This requisite causal connection can be established in the following circumstances: (1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so or (2) when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights." Doe v. School Bd. of Broward Cnty., 604 F.3d 1248, 1266 (11th Cir. 2010). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must

1293-94; Riley, 94 F.3d at 635; Byrd, 783 F.2d at 1007; Gainor, 59 F. Supp. 2d at 1289.

be obvious, flagrant, rampant and of continued duration, rather than isolated

occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

Plaintiffs' conclusory assertions that there was a widespread pattern of abuse

or existence of an improper custom or policy that resulted in deliberate

indifference are insufficient to impose supervisory liability on Brown or the 911

Defendants. See Doe, 604 F.3d at 1266 ("conclusory assertion of a 'history of

widespread abuse' is clearly insufficient to put [defendant] on notice of an ongoing

constitutional deprivation . . . [and] [a] few isolated instances of harassment will

not suffice").[10] Plaintiffs also fail to satisfy their burden based on claims that the

isolated instance of Brown missing a radio call because he was in the bathroom

and Brown's asserted non-compliance with SWAT procedures are sufficient to

---

[10] To the extent Plaintiffs argue that the Fifth Circuit permits a finding of deliberate indifference based on widespread non-adherence to procedures or an isolated act of failing to supervise a subordinate, such as Brown missing a radio call while using the bathroom, the Court disagrees. (See, e.g., Schwartz's Br. in Resp. to the Police Defs.' Mot. for Summ. J. at 20; Ahlfinger's Resp. to the 911 Defs.' Mot. for Summ. J. at 10-12). In Estate of Davis ex rel. McCully v. City of North Richland Hills, the Fifth Circuit made clear that a finding of deliberate indifference to impose supervisory liability requires the supervisor "disregarded a known or obvious consequence of his action" and "a showing of more than negligence or even gross negligence." 406 F.3d 375, 381-82 (5th Cir. 2005). Even if the Court were to apply the Fifth Circuit standard for assessing deliberate indifference on supervisory liability—which it does not—no reasonable finder of fact could find that the 911 Defendants or Brown knew of a risk of a constitutional violation as to Baker and Schwartz and failed to adequately supervise Perry and the 911 operators in light of that risk.

support finding the existence of prior widespread constitutional abuses or an improper custom or policy that resulted in deliberate indifference to Baker and Schwartz's constitutional rights.  See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (regulations do not create constitutional rights or liberty interests); Doe, 604 F.3d at 1266; Braddy v. Fla. Dep't of Labor and Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998) (quoting Brown, 906 F.2d at 671) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences."); Harris v. Birmingham Bd. of Educ., 817 F.2d 1525, 1527 (11th Cir. 1987) (violation of state statute does not constitute a constitutional violation); Bradberry, 789 F.2d at 1514-15 (isolated acts that do not constitute repeated, constant constitutional violations are not actionable under Section 1983 as evidence of a custom or policy); (Ahlfinger's Br. in Resp. to Defs. Perry and Brown's Mot. for Summ. J. at 19-23).  Plaintiffs' focus on non-compliance with operating manuals and procedures by the 911 operators also is not evidence of prior widespread constitutional abuses or an improper custom or policy that resulted in deliberate indifference to constitutional rights.  See id.

There are no grounds for imposing supervisory liability on the 911 Defendants or Brown because there is no evidence of the existence of prior

widespread constitutional abuses or an improper custom or policy that resulted in

deliberate indifference by Perry or the 911 operators to put Brown or the 911

Defendants on notice of a need to take action with regard to them.

### 3. Official capacity claims against the 911 Defendants, Brown, and Gwinnett County for unreasonable use of force in violation of the Fourth Amendment

Claims under Section 1983 against officials in their official capacity are

"simply 'another way of pleading an action against an entity of which an officer is

an agent.'" Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (quoting

Kentucky v. Graham, 473 U.S. at 159, 165 (1985)). Because Plaintiffs brought suit

against Gwinnett County, any official capacity claims, to the extent they have

adequately been alleged, in this case are redundant and are not required to be

addressed separately from the claims against the County. See Pompey v. Broward

Cnty., 95 F.3d 1543, 1545 n.2 (11th Cir. 1996) ("we treat [the official capacity]

claims as claims against the County"); Busby, 931 F.2d at 776.

In any event, Plaintiffs cannot rely on a theory of *respondeat superior* to

hold Gwinnett County liable for the conduct of its officers. McDowell v. Brown,

392 F.3d 1283, 1289 (11th Cir. 2004).

> It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable. A county does not incur § 1983 liability for injuries caused solely by its employees. Nor does the fact that a plaintiff has suffered a

deprivation of federal rights at the hands of a municipal employee
infer municipal culpability and causation. Instead, to impose § 1983
liability on a municipality, a plaintiff must show: (1) that his
constitutional rights were violated; (2) that the municipality had a
custom or policy that constituted deliberate indifference to that
constitutional right; and (3) that the policy or custom caused the
violation.

Id. (internal quotation marks and citations omitted).

"A policy is a decision that is officially adopted by the municipality, or

created by an official of such rank that he or she could be said to be acting on

behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489

(11th Cir. 1997). Plaintiffs have not identified a policy that led to a constitutional

violation, but assert that Gwinnett County is liable for the deaths of Baker and

Schwartz based on the alleged existence of a custom in failing to train or supervise

its police officers and 911 operators.[11]

A municipality may be held liable under Section 1983 when its policy or

custom of inadequately training or supervising its officers causes a constitutional

injury. AFL-CIO, 637 F.3d at 1188. Liability only arises, however, "'where the

failure to train amounts to deliberate indifference to the rights of persons with

---

[11] "A custom is a practice that is so settled and permanent that it takes on the force
of law." Sewell, 117 F.3d at 489. To establish a custom, a plaintiff must
demonstrate a practice that is persistent and widespread. See Turner v. Jones, 415
F. App'x 196, 202 (11th Cir. 2011); Brown v. City of Lauderdale, 923 F.2d 1474,
1481 (11th Cir. 1991).

whom the police come into contact.'" Id. (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989)). To establish deliberate indifference, "a plaintiff must put forward some evidence that the municipality was aware of the need to train or supervise its employees in a particular area." AFL-CIO, 637 F.3d at 1188-89.

"Establishing notice of a need to train or supervise is difficult." Id. at 1189. The Eleventh Circuit has described this requirement as having a "high standard of proof [that] is intentionally onerous for plaintiffs," which is necessary to prevent the discrete doctrine of municipal liability from collapsing into simple *respondeat superior* liability. Gold, 151 F.3d at 1351 n.10.

A municipality ordinarily will be on notice of a need to train or supervise only if there is a "widespread pattern of prior abuse" or if it has knowledge that a particular constitutional violation has occurred. See AFL-CIO, 637 F.3d at 1189. Whatever the circumstances, "it must have been obvious that the municipality's failure to train or supervise its employees would result in a constitutional violation." Id. A plaintiff must further show that the municipality made a deliberate choice not to take any action on its knowledge of the need to train or supervise. Id.; see also Gold v. City of Miami, 151 F.3d 1346, 1350-51 (11th Cir. 1998).

Plaintiffs make factually-unsupported, conclusory claims that there was widespread non-compliance with police procedures by police officers and 911 operators that put Gwinnett County on notice of a need to correct the behavior of its employees. This conclusory claim of non-compliance with procedures is not proof of a widespread pattern of prior constitutional abuses by the 911 operators or police officers. No evidence of prior constitutional abuses was offered by Plaintiffs, much less any evidence that there was an obvious need for Gwinnett County to train or supervise police officers and 911 operators to prevent constitutional violations, and that Gwinnett County deliberately chose to ignore an obvious need. The evidence in this case, however, shows that Gwinnett County 911 operators and police officers are trained in taking calls and responding to suicidal individuals, there are policies in place governing how to respond to these situations, and that corrective actions are taken when there is a failure to comply with the policies. See Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003); (Exs. E and F to Police Officer Defs.' Mot. for Summ. J.; Ex. 2 to Dep. of Phil Raines; Ex. A to the 911 Defs.' Mot. for Summ. J.).

Plaintiffs have simply not presented "evidence that the municipality was aware of the need to train or supervise its employees in a particular area" to avoid a constitutional violation. See AFL-CIO, 637 F.3d at 1188-89; see also City of

Canton, 489 U.S. at 389 ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases— can a [municipality] be liable for such a failure under § 1983."); Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1293-94 (11th Cir. 2009) ("To establish a city's deliberate indifference, 'a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'"). Plaintiffs' presentation of statements by personnel that were given after the shooting and expert reports prepared for the purposes of this litigation are not proof that Brown or the 911 Defendants were on notice before the shooting of alleged widespread abuses of constitutional rights. Plaintiffs suggest that there may have been prior noncompliance with procedures and that this could support a negligence claim arising from an alleged improper use of force. This suggestion and evidence is substantially insufficient to establish a Fourth Amendment constitutional violation. See Sandin, 515 U.S. at 481-82; Peterson, 504 F.3d at 1336; Harris, 817 F.2d at 1527.[12] Summary judgment in favor of the 911 Defendants and Brown in their

---

[12] It may be possible in some cases that the need for training in a particular area is so obvious that a plaintiff may establish deliberate indifference without showing an earlier constitutional violation or pattern of abuse. AFL-CIO, 637 F.3d at 1189; see also Lewis, 561 F.3d at 1293-94. These circumstances are narrow and limited and exist when there is "an area that would be so obvious as to require adequate

official capacities and Gwinnett County on Plaintiffs' Fourth Amendment claim is required.

### 4. *Qualified immunity of the 911 Defendants and Brown*

Qualified immunity protects government officials who perform discretionary functions from suits in their individual capacities, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations

---

training by the municipality to avoid liability," such as the use of firearms, and where a violation of federal rights is "a highly predictable consequence" of that "particularly glaring omission" to provide training. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 409 (1997); Lewis, 561 F.3d at 1293; Gold, 151 F.3d at 1352. For example, the Supreme Court has suggested a hypothetical situation where a police force provides firearms to its police officers, in which case the unconstitutional use of deadly force might be "a highly predictable consequence" of failing to train officers in the use of deadly force. City of Canton, 489 U.S. at 390 n.10. This narrow circumstance does not apply in this case because Brown and the 911 Defendants were trained in how to perform their duties. (See Exs. E and F to Police Officer Defs.' Mot. for Summ. J.; Ex. A to the 911 Defs.' Mot. for Summ. J.). Even if they were not trained in handling calls from suicidal individuals, a constitutional violation involving a responding officer is not a highly predictable consequence of a failure to provide that training.

omitted).  "A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity."  Benton v. Hopkins, 190 F. App'x 856, 858 (11th Cir. 2006).

To be protected by qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Lee, 284 F.3d at 1194 (internal quotation marks omitted).  A public official acts within the scope of his discretionary authority where the acts complained of were undertaken pursuant to the performance of his duties and within the scope of his authority.  See Rich v. Dollar, 841 F.2d 1558, 1564-65 (11th Cir. 1988); see also Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) ("To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority.").

Here, it is undisputed that Brown and the 911 Defendants were on duty and performing duties within the scope of their authority when the events underlying this litigation occurred.  There is no genuine dispute of fact that Brown and the 911 Defendants were acting within the scope of their discretionary authority in

performing their job-related and discretionary tasks in supervising Perry and responding to Baker's 911 call.  See id.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  Id.  The Supreme Court has set forth a two-part test for determining if a defendant is entitled to qualified immunity.  "'The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation.'"  Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003) (quoting Hope, 536 U.S. at 736).  If a constitutional right would have been violated under the plaintiff's version of the facts, "a plaintiff must show that the right violated was clearly established." Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009).

Determining whether a constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from by Pearson v. Callahan, 555 U.S. 223 (2009), declined to extend by Fennell v. Gilstrap, 559 F.3d 1212 (11th Cir. 2009).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable state actor that his conduct was unlawful in the situation he confronted."  Id. at

202.  "If the law did not put the officer on notice that his conduct would be clearly

unlawful, summary judgment based on qualified immunity is appropriate."  Id.

The 911 Defendants and Brown were engaged in the discretionary

performance of their duties on July 22, 2009, and their conduct in responding to a

911 call and supervising Perry would not be clearly unlawful to a reasonable state

actor as violating a clearly established constitutional right.[13]  To the extent the 911

Defendants and Brown have been sued in their individual capacities, they are

entitled to qualified immunity for the Section 1983 claims against them.  Summary

judgment is granted to the 911 Defendants and Brown in their individual capacities

on Plaintiffs' constitutional claim.

C.    Claim 2 – State-law wrongful death claim

1.    *Official immunity bars state law claims against the 911
Defendants and Brown*

Plaintiffs assert their state-law wrongful death claim against the 911

Defendants and Brown in their individual capacities.  These claims implicate

Georgia's doctrine of official immunity.  "Under Georgia law, a public officer or

---

[13] The Court also finds that Plaintiffs' allegations that the 911 Defendants or
Brown violated departmental regulations and operating procedures are insufficient
to alter the conclusion that these Defendants are entitled to qualified immunity.
See Edwards v. Gilbert, 867 F.2d 1271, 1276-77 (11th Cir. 1989) ("officials sued
for constitutional violations lose no immunity simply because their conduct
violates some state statute or regulation").

employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure." Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001); Gilbert, 452 S.E.2d at 483 (quoting Ga. Const. art. I, § II, ¶ IX(d)). "'A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.'" Payne v. DeKalb Cnty., 414 F. Supp. 2d 1158, 1183 (N.D. Ga. 2004) (quoting Harvey v. Nichols, 581 S.E.2d 272, 276 (Ga. Ct. App. 2003)). "A discretionary act, on the other hand, 'calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.'" Id. (quoting Harvey, 581 S.E.2d at 276). Official immunity does not apply to ministerial acts negligently performed, only the performance of discretionary acts. See Polk Cnty. v. Ellington, 702 S.E.2d 17, 23 (Ga. Ct. App. 2010).

The actions of police officers and 911 operators in supervising subordinates and in responding to calls for assistance involving emergency situations are discretionary acts, rather than ministerial ones. See Phillips v. Hanse, 637 S.E.2d 11, 12 (Ga. 2006) (violations of regulations or directives when responding to emergency situations does not transform discretionary decisions into ministerial

acts); <u>Cameron</u>, 549 S.E.2d at 345-46 (officers exercise discretion in responding to emergency calls); <u>Polk Cnty.</u>, 702 S.E.2d at 23-24 (performance of emergency services duties that require assessing and responding to emergency situations involve the exercise of discretion); <u>Russell v. Barrett</u>, 673 S.E.2d 623, 629 (Ga. Ct. App. 2009) (quoting <u>Harvey v. Nichols</u>, 581 S.E.2d 272, 276-77 (Ga. Ct. App. 2003)) ("[T]his Court has consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function."); <u>Selvy v. Morrison</u>, 665 S.E.2d 401, 404 n.10 (Ga. Ct. App. 2008) ("A discretionary act, in contrast to a ministerial act, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."); <u>Norris v. Emmanuel Cnty.</u>, 561 S.E.2d 240, 244 (Ga. Ct. App. 2002) (acts of public employees in responding to crises and emergencies are discretionary); (Dep. of Charles Walters at 20-22).

The Court finds here that the need for Brown and the 911 Defendants to exercise judgment in responding to Baker's call and performing their duties as emergency first responders makes their conduct discretionary.  <u>See</u> <u>id.</u>  The 911 Defendants and Brown are shielded against Plaintiffs' state law claims unless

Plaintiff can show that they acted with malice or an intent to cause injury.  See

Cameron, 549 S.E.2d at 346.[14]

The bar for proving malice or an intent to cause injury is high.  For the

purposes of official immunity,

> actual malice requires a deliberate intention to do wrong and denotes
> express malice or malice in fact.  Actual malice does not include
> implied malice, or the reckless disregard for the rights and safety of
> others.  A deliberate intention to do wrong such as to constitute the
> actual malice necessary to overcome official immunity must be the
> intent to cause the harm suffered by the plaintiffs.  Likewise, the
> phrase "actual intent to cause injury" has been defined in a tort
> context to mean an actual intent to cause harm to the plaintiff, not
> merely an intent to do the act purportedly resulting in the claimed
> injury.  This definition of intent contains aspects of malice, perhaps a
> wicked or evil motive.

Marshall v. Browning, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011) (quoting Selvy, 665

S.E.2d at 404-05); see also Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999)

("in the context of official immunity, actual malice requires a deliberate intention

---

[14] Ordinary negligence is the failure to take "that degree of care which is exercised
by ordinarily prudent persons under the same or similar circumstances."  O.C.G.A.
§ 51-1-2.  "The essential elements of a negligence claim are the existence of a legal
duty; breach of that duty; a causal connection between the defendant's conduct and
the plaintiff's injury; and damages."  Boller v. Robert W. Woodruff Arts Center,
Inc., 716 S.E.2d 713, 716 (Ga. Ct. App. 2011) (internal quotation marks omitted).
To the extent Plaintiffs assert that Brown or the 911 Defendants negligently
performed a ministerial act, the Court finds there is no evidence here that would
permit a reasonable finder of fact to find that a duty was owed to Baker or
Schwartz by Defendants, or that any act or omission by Brown or the 911
Defendants caused their deaths.

to do wrong") (internal quotation omitted); <u>Williams v. Solomon</u>, 531 S.E.2d 734, 736 (Ga. Ct. App. 2000) ("conduct exhibiting a reckless disregard for the safety of others does not equate with the actual malice necessary to defeat a claim of official immunity").  "A 'deliberate intention to do wrong' such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs."  <u>Murphy v. Bajjani</u>, 647 S.E.2d 54, 60 (Ga. 2007).[15]

There is no evidence of actual malice on the part of Brown or the 911 Defendants.  Summary judgment for Brown and the 911 Defendants is granted on Plaintiffs' state-law wrongful death claim against them in their individual capacities.

> 2.    *Statutory immunity also bars state law claims against the 911 Defendants*

The 911 Defendants, including Gwinnett County, are entitled to immunity on the Georgia law claims against them.

Under Georgia law,

neither the state nor any local government of the state nor any emergency 9-1-1 system provider or service supplier or its employees, directors, officers, and agents, except in cases of wanton and willful

---

[15] Claims of implied malice or of reckless or wanton conduct are not sufficient to defeat a claim of official immunity for discretionary acts.  <u>See</u> <u>Murphy</u>, 647 S.E.2d at 60; <u>Adams</u>, 520 S.E.2d at 898; <u>Selvy</u>, 665 S.E.2d at 404-05.

misconduct or bad faith, shall be liable for death or injury to any person or for damage to property as a result of either developing, adopting, establishing, participating in, implementing, maintaining, or carrying out duties involved in operating the emergency 9-1-1 system or in the identification of the telephone number, address, or name associated with any person accessing an emergency 9-1-1 system

O.C.G.A. § 46-5-131(a).

Willful misconduct requires "an actual intention to do harm or inflict injury." <u>Hendon v. DeKalb Cnty.</u>, 417 S.E.2d 705, 712 (Ga. Ct. App. 1992). Wanton misconduct "is that which is 'so reckless or so charged with indifference to the consequences . . . as to justify the jury finding a wantonness equivalent in spirit to actual intent." <u>Id.</u> "'Bad faith' is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." <u>Id.</u>

The 911 Defendants are entitled to immunity under Georgia law because no reasonable trier of fact could find they acted with wanton and willful misconduct or bad faith in responding to Baker's call. <u>See</u> O.C.G.A. § 46-5-131(a); <u>Hendon</u>, 417 S.E.2d at 712. Even if a trier of fact found that Raines failed to accurately convey information, there is no evidence that he or any other 911 operator acted with indifference to Baker's call or intended to harm or inflict injury on Baker or Schwartz. <u>See Hendon</u>, 417 S.E.2d at 712; (Ex. 2 to Dep. of Phil Raines.). The

undisputed facts are that the 911 operators at the communications center did not exhibit willful or wanton misconduct, or bad faith in handling the call from Baker. As a result, the 911 Defendants are entitled to immunity under O.C.G.A. § 46-5-131(a) for the state-law wrongful death claim against them. Summary judgment for the 911 Defendants is required to be granted on this additional ground for the claims against them in their individual and official capacities.

> 3.     *Sovereign immunity bars state law claims against Gwinnett County and the official capacity claims against the 911 Defendants and Brown*

If Plaintiffs seek to assert claims against Gwinnett County, and on their official capacity claims against the 911 Defendants and Brown, the Court finds these Defendants are subject to sovereign immunity.[16]

The Georgia Constitution states that "sovereign immunity extends to the state and all of its departments and agencies." Ga. Const. art. I, § II, ¶ IX. The Georgia Supreme Court has held that the Georgia Constitution's grant of sovereign immunity applies to counties. Gilbert v. Richardson, 452 S.E.2d 476, 479 (Ga. 1994); see also Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1197 n.36 (11th Cir. 1994) ("Even if Dekalb county had any liability under state law, . . . a

---

[16] Plaintiffs deny that they have brought any state-law claims against Gwinnett County based on the deaths of Baker and Schwartz. (See, e.g., Pls.' Br. in Resp. to the Police Officer Defs.' Mot. for Summ. J. [Ahlfinger Action Dkt. 90] at 24).

county and its officers sued in their official capacities have the same sovereign immunity protection as the state."), overruled on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002); Payne v. DeKalb Cnty., 414 F. Supp. 2d 1158, 1182 (N.D. Ga. 2004) (state law claims against a county and its officials in their official capacities barred in absence of statutory waiver of sovereign immunity); Toombs Cnty. v. O'Neal, 330 S.E.2d 95, 97 (Ga. 1985) (citing Ga. Const. art. I, § II, ¶ IX). Sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. art. I, § II, ¶ IX(e); see also O.C.G.A. § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute."). The Georgia Tort Claims Act, O.C.G.A. § 50-21-20 et seq., does not waive the sovereign immunity of counties. Woodard, 456 S.E.2d at 582; O.C.G.A. § 50-21-22(5) (excluding "counties" from Georgia Tort Claims Act).

There is no waiver of sovereign immunity for any claims against Gwinnett County and any official capacity claims that may have been alleged against the 911 Defendants and Brown. Summary judgment on Plaintiffs' state-law wrongful death claim, to the extent it has been asserted, against Gwinnett County and any official capacity claim against the 911 Defendants and Brown, is required to be granted.

Plaintiffs' claims of the estates and for attorneys' fees, Claims 3 and 4 in their Complaints, are contingent upon the viability of the Section 1983 and state-law wrongful death claims alleged in Claims 1 and 2. The Court has granted summary judgment on Claims 1 and 2 and thus summary judgment is required to be entered on Claims 3 and 4, except for the claims against Perry, which are subject to the bankruptcy stay and are not addressed in this Order.

## III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Police Officer Defendants' Motions for Summary Judgment [Ahlfinger Action Dkt. 64, Schwartz Action Dkt. 43] are **GRANTED IN PART**. Summary judgment is **GRANTED** to Defendant Brown on the claims against him. The claims against Defendant Perry are not considered because of the bankruptcy stay that arises from Perry's Chapter 7 bankruptcy petition.

**IT IS FURTHER ORDERED** that the 911 Defendants' Motions for Summary Judgment. [Ahlfinger Action Dkt. 58, Schwartz Action Dkt. 39] are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Request for Oral Hearing on the 911 Defendants' Motions for Summary Judgment [Ahlfinger Action Dkt. 88; Schwartz Action Dkt. 52.2] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall administratively close this action until the lifting of the bankruptcy stay for the claims against Defendant Perry.  At that time, Plaintiffs may renew their Motions for Summary Judgment against her.

**SO ORDERED** this 15th day of February, 2013.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE